## MORRIS & CO. v. KERR S. S. CO., Inc.

Circuit Court of Appeals. Second Circuit.
August 8, 1927.

No. 370.

**1. Shipping ⊂⊃118—Contract to ship goods on first ship on removal of restrictions held breached by failure to ship under license prior to permitting general trading.**

Contract of steamship company, when trading with Germany, was limited to licensed trade in food, to establish regular service as soon as restrictions on trading with Germany were removed, and to ship plaintiff's goods on first steamer, *held* breached by failure to carry plaintiff's goods on first ship sent under license from War Trade Board, although requirement of license was not dispensed with, and general trading with Germany not permitted until afterward.

**2. Shipping ⊂⊃118—Steamship company held liable on contract to ship goods on removal of restrictions on first ship, although ship in question had already been chartered.**

Steamship company was liable on contract to ship goods to Hamburg on first ship as soon as restrictions were removed, although its agent had prior to completion of contract chartered whole ship to third party, under charter requiring it to go to Copenhagen if license to go to Hamburg could not be obtained.

**3. Shipping ⊂⊃118—Consent that certain vessel should satisfy contract for shipment, without knowledge of breach, held not to prevent recovery.**

Agreement by shipper that certain vessel should be first vessel under contract for shipping goods to Germany after World War, made in ignorance of fact that defendant steamship company had sent another vessel on which plaintiff's goods were not carried according to contract, did not release existing cause of action for breach of such contract.

**4. Appeal and error ⊂⊃1052(5)—Admitting parol evidence, if error, held harmless, where, under interpretation placed on contract, result would be same, even if it should be disregarded.**

In shipper's action for breach of shipping contract, admitting parol evidence, if error, was harmless, where, under interpretation placed on contract, result would be same, even if such evidence should be disregarded.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Morris & Co., now known as the American Food Products Company, against the Kerr Steamship Company. From an interlocutory decree in admiralty for libelant, with reference to report as to damages, respondent appeals. Affirmed.

This is an appeal from an interlocutory decree in admiralty in favor of the libelant, with the usual reference to report as to damages. The suit is for damages, due to the alleged breach of a maritime contract of affreightment evidenced by the following letter:

"Kerr Steamship Co., Inc.
"17 Battery Place, New York.
"Cable Address—Kerrline.

"May 12, 1919.

"Messrs. Morris & Co., Union Stockyards, Chicago, Ill. Attention: Mr. MacLaren.—Dear Sirs: Referring to the writer's conferences with you in Chicago, last week, we are pleased to note from telegram since received from our Chicago office that you have closed 6,000 tons provisions for shipment to Hamburg, Germany, on the terms and conditions put before you which are as follows:

"We agree to establish and maintain a regular service to Hamburg, Germany, as soon as the restrictions against dispatching commercial ships direct to that port are removed.

"Said service shall consist of about three (3) steamers monthly, to be dispatched as near as possible at intervals of ten days each.

"You are to ship and we are to carry 2,000 tons per month for three months. The rates to be as follows: $3.00 per 100 pounds on the first 2,000 tons; $2.75 per 100 pounds on the second 2,000 tons; $2.50 per 100 pounds on the third 2,000 tons.

"All freight to be prepaid and the entire contract to be carried out within approximately ninety days from the date of departure of the first steamer.

"We agree to carry not less than 650 tons on the first steamer and will try to divide the business on later steamers as near as possible in equal quantities.

"Loading is to take place at New York, Philadelphia, or Boston, at our option, we to give you due notice of loading port.

"It is also understood and agreed that, all things being equal, you will give us the preference on any further business you may have for Hamburg during the period of this contract.

"Kindly confirm your acceptance by signing and returning the duplicate of this letter.

"Very truly yours,
"Kerr Steamship Co., Inc.,
"C. J. Beck, General Manager.
"CJB—M.
"Accepted."

The accepted copy of this letter was delivered to appellant on May 19 or May 20, 1919. Subsequently, in June, 1919, the contract was modified by increasing the tonnage to be shipped by appellee.

Prior to making the contract, another agent of appellant had, on May 10, 1919, chartered the entire cargo space of the steamship Kerlew to Armour & Co. for a trip to Copenhagen, with the privilege of diverting the vessel to Hamburg, if permission could be obtained from the War Trade Board. At all times up to July 14, 1919, there were restrictions upon trading with Germany. The War Trade Board had issued an announcement on April 23, 1919, that shipments of foodstuffs from the United States to Germany would be permitted under license of the War Trade Board within the limits prescribed by the Brussels Agreement. On or about May 26, 1919, the appellant discovered that by carrying a cargo solely of foodstuffs a license for the voyage could be obtained. On that date a license was obtained for the Kerlew and she sailed for Hamburg on May 31, 1919.

Immediately after securing the license for the Kerlew appellant telegraphed its Chicago agent as follows:

"Please inform Swift, Morris, Wilson, War Trade Board has approved voyage to Hamburg one our steamers chartered for full cargo foodstuff destined Germany believe can obtain further voyage approvals. stop. Can packers obtain export licenses if so propose starting service under contracts recently closed with Kaisho Maru ready load New York about June tenth answer soonest possible.                Kerr S. S. Co."

The reference in the telegram to Swift and Wilson is explained by the fact that appellant had made contracts with those packing houses of the same purport as its contract with appellee. This telegram was communicated by appellant's agent to appellee. Subsequently the Kermanshah was substituted for the vessel mentioned in the telegram.

On June 13, 1919, appellee wrote to appellant as follows:

"Kerr Line Steamship Company, Inc., Chicago, Ill.—Dear Sirs: I am advised this morning on my return to the city that the Kerr Line Steamship Company has loaded and agreed to operate one of your steamers from New York to Hamburg for certain shippers, which will be the first steamship of the Kerr Line operated into Hamburg.

"I can hardly believe that your company, in view of the understanding that the first steamship which the Kerr Line operated into Hamburg would provide pro rata space for Morris & Company shipments, would operate any steamer to that port without the carrying out of that arrangement, and I write to ask you if there is any foundation of fact in the statement that on the first steamer you are operating into Hamburg, you are not providing space for Morris & Company in accordance with our agreement.

"Yours truly, Morris & Company,
"A. W. MacLaren, Manager Transportation Department."

The following reply was sent June 21, 1919:

"Morris & Company, Union Stockyards, Chicago, Ill. Attention: Mr. A. W. MacLaren.—Dear Sir: Replying to yours of the 13th, relative to your quota of space on the first steamer placed in the Hamburg service as per agreement of contract dated May 12:

"There is absolutely no foundation for the statement as reported to you, as the Kermanshah is the first steamer scheduled for the opening of this service, and is the first steamer to carry cargo for any of the packers on contracts made with the various packers by our general manager, Mr. Beck, at the same time your contract was made.

"Yours truly,
"Kerr Steamship Co., Inc.,
"B. A. Rockwell, General Western Agent."

The Kermanshah sailed for Hamburg June 24, 1919, carrying appellee's initial shipment. Appellant contends that she was the first ship in the service contracted for with appellee. The appellee contends that the sailing of the Kerlew on May 30 without cargo for the appellee was a breach of the contract. The trial judge so held.

Jacob Aronson, of New York City, for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (Herbert Barry and Gardner D. Howie, both of New York City, of counsel), for libelant-appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] This appeal involves a construction of the contract evidenced by the letter of May 12, 1919. Appellant agreed to establish "a regular service to Hamburg, Germany, as soon as the restrictions against dispatching commercial ships direct to that port are removed," and to carry for appellee "not less than 650 tons on the first steamer." At the time trading with Germany was permitted only upon securing from the War Trade Board an export license for the goods (limited to foodstuffs) and a bunker license for the vessel. No vessel had as yet been licensed for a voyage to Germany. But there

was reason to believe that such voyages would be licensed, if the cargo consisted solely of foodstuffs, and this proved to be the ruling of the board when the first application was made by appellant on May 24, 1919. Not until July 14, 1919, was the requirement of licenses dispensed with and general trading with Germany permitted. It is in the light of this setting that we must determine the meaning of the provision that a regular service shall be established "as soon as the restrictions * * * are removed."

The appellant contends that the restrictions were not removed until July 14th, and that it was under no obligation to start a regular service to Hamburg before that date. This argument insists upon a technically accurate meaning for the words "restrictions" and "removed." We do not think the parties intended to use them in so narrow a sense. Certainly the appellee would never wittingly have contracted to postpone its transportation until the port of Hamburg was free without special permit, while other packers were getting through their products on licenses issued under regulations of the War Trade Board to any applicant. It is common knowledge that every packing house and every ocean-freight carrier was anxious to be first in the field when the German ports should be opened to American vessels. The parties were not using terms to draw any technical distinction between restrictions and regulations. They were contracting about transportation to Germany as soon as it was permissible to send vessels direct to German ports.

We agree with the District Judge that restrictions were removed within the meaning of their contract as soon as it became possible to obtain licenses under the regulations of the War Trade Board, so that vessels could be dispatched at regular intervals. This was true on and after May 26, 1919. The conduct of the parties accords perfectly with this interpretation. They made no distinction between trips prior and trips subsequent to July 14th. There was no suggestion that the Kermanshah was not within the service contracted for because a license was necessary for her voyage.

[2] If, as we have indicated, the contract provision under discussion is to be interpreted as an agreement by appellant to establish a regular service to Hamburg as soon as it was permissible to dispatch commercial ships direct to that port, the argument that appellant might establish a special service for Armour & Co. prior to establishing its regular service

under the contract with appellee is patently fallacious. Appellant was bound to establish its regular service "as soon as" commercial ships could be dispatched, and was bound to give appellee space on the first ship. The sailing of the Kerlew was therefore a breach of its contract obligations to appellee. It can make no difference that she was chartered before the contract with appellee, nor that the charter required her to go to Copenhagen if she could not get a license to go to Hamburg. It simply shows that different agents of appellant caused it to make inconsistent contracts, the performance of one being a breach of the other.

[3] It is urged that the appellee agreed by its correspondence in June that the Kermanshah should be the first vessel in the contract service. But the trial judge found that such agreement was made without knowledge of the Kerlew's sailing to Hamburg, and there is ample evidence to sustain his finding. Appellee could not release its existing cause of action for breach of its contract of May 12th by anything it did while still ignorant of the breach.

[4] The admission of parol evidence complained of, if erroneous, was harmless error, for, under the interpretation we have placed upon the contract, the result must be the same, though this evidence be disregarded.

For the foregoing reasons, we think the decree should be affirmed, with costs; and it is so ordered.